UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JESSE KOENIG,

    Plaintiff,

v.

KEWEENAW BAY OJIBWA
COMMUNITY COLLEGE, et al.,

    Defendants.

_____/

Case No. 2:23-cv-103

Hon. Paul L. Maloney

## OPINION AND ORDER

Plaintiff Jesse Koenig brings this action against his former employer, Keweenaw Bay Ojibwa Community College ("KBOCC") and KBOCC officials, Beth Virtanen, Lori Ann Sherman, and Robin Chosa, in their official and individual capacities ("Individual Defendants"). (Compl. ECF No. 1.) Defendants move to dismiss the complaint under Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(c) (judgment on the pleadings). (ECF No. 69.) For reasons set forth below, the Court will grant Defendants Rule 12(b)(1) motion for lack of subject matter jurisdiction.

### I. BACKGROUND

KBOCC is a community college in L'Anse, Michigan. (Compl. ¶ 2.) In 1975, the Keweenaw Bay Indian Community, Michigan, a federally recognized sovereign nation (the "Tribe"), chartered KBOCC. *See* Indian Entities Recognized, 81 Fed. Reg. 5019, 5021 (Jan. 29, 2016); Keweenaw Bay Indian Cmty., Tribal Code § 114-20.

In 2010, KBOCC hired Koenig as a professor. (Compl. ¶ 19.) He later became the Chair of KBOCC's Liberal Studies Department. (*Id.*) Koenig alleges he "performed all of his positions

. . . in an exemplary fashion." (*Id.* ¶ 20.)  KBOCC thought otherwise and terminated Koenig in 2020. (*See id.*)  Koenig claims his termination had nothing to do with his performance. (*See id.*)

Koenig believes that he was unlawfully terminated for reporting KBOCC's suspicious "activity to the Higher Learning Commission (HLC)." (*Id.*)  Koenig alleges that KBOCC covered up activity that violated HLC guidelines, like "backing dating surveys, [and] elimination of the Assessment Coordinator/Accreditation Liaison Officer position." (*Id.* ¶ 28.)  Koenig also alleges that KBOCC administrators committed fraudulent actions to meet the HLC guidelines. (*See id.* ¶¶ 29, 45.)  Acting President of KBOCC, Lori Sherman, allegedly "intentionally . . . submitted false claims, records, and statements to officials of the HLC," and "Dean Virtanen systematically removed the Faculty Council from academic decision making and policy making." (*Id.*)  In May 2020, Koenig "submitted a 29-page letter to the HLC detailing how KBOCC, and the individual Defendants, were undermining HLC requirements and lying and providing false information." (*Id.* ¶ 48.)  KBOCC terminated his employment two months later. (*Id.* ¶ 57.)

Koenig claims that Defendants violated the False Claims Act ("FCA") by submitting false information to the HLC. (*See id.* ¶ 15.)  He also claims that Defendants committed unlawful retaliation in violation of 31 U.S.C. § 3730(h) of the FCA when they terminated him for notifying the HLC of KBOCC's "cover-up." (*See id.* ¶¶ 28, 61-80.)  Lastly, Koenig asserts that Defendants violated Mich. Comp. Laws §§ 408.473 and 408.475 for failing to pay him accrued sick leave and vacation pay. (*See id.* ¶¶ 82-89.)

Defendants move to dismiss under Rules 12(b)(1) and 12(c).  KBOCC argues it is protected from Koenig's suit under tribal sovereign immunity and the Individual Defendants argue that immunity extends them.  If the Court concludes it can exercise subject matter jurisdiction, Defendants argue that Koenig fails to state a claim on which relief can be granted under Rule 12(c).

2

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Motions to dismiss premised on tribal sovereign immunity are challenges to subject matter jurisdiction, which fall under Federal Rule of Civil Procedure 12(b)(1). *See Spur v. Pope*, 936 F.3d 478, 482 (6th Cir. 2019) ("[T]ribal sovereign immunity is a jurisdictional doctrine."). Thus, the Court "must address it—and must do so first." *Id.* "If it shields the tribe, we have the power to say that (and only that) and to dismiss the claim for lack of subject-matter jurisdiction." *Id.* at 483 (citing *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919-20 (6th Cir. 2009)).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)). In a facial attack, the Court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness, and the Court weighs competing evidence to determine whether subject matter jurisdiction exists. *Id*. Regardless of the type of jurisdictional attack, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

### B. Rule 12(c)

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual

allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(c) motions for judgment on the pleadings challenges whether the claimant has pled enough factual content to satisfy its Rule 8 burden. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A Rule 12(c) motion uses the same standard for reviewing a pleading as a motion brought under Rule 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)). A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To survive a motion to dismiss, the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and the "claim to relief must be plausible on its face." *Id*. at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). If plaintiffs do not "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

Koenig asserts three claims against Defendants: False Claims Act violation under 31 U.S.C. § 3729 (Count I); False Claims Act violation under 31 U.S.C. § 3730 (Count II); and entitlement to accrued sick leave and vacation pay under Mich. Comp. Laws §§ 408.473, 408.475 (Count III).

Defendants move to dismiss Koenig's complaint on two fronts: First, Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants mount a factual attack[1] and argue that this Court lacks jurisdiction to hear the claims because Defendants are protected under tribal sovereign immunity. And they argue that Koenig failed to exhaust his tribal remedies. Second, Defendants move for judgment on the pleadings under Rule 12(c). Defendants argue that Koenig fails to state a claim on which relief can be granted. The Court begins with Defendants' jurisdictional argument, as this Court must have subject matter jurisdiction over the case to proceed to its merits.

### A. Tribal Sovereign Immunity: KBOCC

KBOCC asserts that it is an "arm" of the Tribe, therefore, it is cloaked with sovereign immunity. Because it is protected by sovereign immunity, it argues that this Court lacks jurisdiction to hear Koenig's claims against it. Thus, the question is whether KBOCC is properly considered an arm of the Tribe.

Federally recognized tribes "possess the 'common-law immunity from suit traditionally enjoyed by sovereign powers.'" *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 387 (2023) (citation omitted). Tribal sovereign immunity is a "necessary corollary to Indian sovereignty and self-governance." *Id.* Lawsuits against tribes are barred, absent congressional abrogation or an explicit waiver from the tribe itself. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014). This immunity not only protects tribes themselves, "but also extends to arms of the tribe acting on behalf of the tribe." *White v. Univ. of Cal.*, 765 F.3d 1010, 2015 (9th Cir. 2014) (citations omitted); *see Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523

---

[1] When reviewing a factual attack on jurisdiction, courts may consider sources outside the pleadings. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325. A trial court may "consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

5

U.S. 751, 754-55 (1998)) (explaining that tribal immunity shields "arms of the tribe" acting on its behalf); *Spurr v. Pope*, 936 F.3d 478, 483 (6th Cir. 2019) (citing *Memphis Biofuels*, 585 F.3d at 921).

The Ninth Circuit uses a five-factor test to determine whether an entity functions as an "arm of the tribe" such that it is entitled to sovereign immunity:[2]

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

*White*, 765 F.3d at 1025 (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010); *see Parrotta v. Island Resort & Casino,* No. 2:24-cv-56, 2025 WL 643180 (W.D. Mich. Jan. 16, 2025), *report and recommendation adopted*, No. 2:24-cv-56, 2025 WL 640793 (W.D. Mich. Feb. 27, 2025) (applying the *White* factors to determine whether an entity is an "arm of the tribe"). The Court will apply the *White* factors in determining whether KBOCC has established that it is an arm of the Tribe.

### 1. Method of Creation

Generally, the method of creation factor weighs in favor of finding an entity is an arm of a tribe when the entity is (i) established, chartered, or authorized under tribal law, (ii) has tribal

---

[2] The Tenth Circuit Court of Appeals employs almost the exact same test. *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010); *see also Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 177 (4th Cir. 2019) (utilizing first five *Breakthrough* factors "to analyze arm-of-the-tribe sovereign immunity."). The *Breakthrough* factors are: (1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' "connection to tribal economic development, and whether those policies are served by granting immunity to the economic entities. *Breakthrough*, 629 F.3d at 1187. The Fourth Circuit, however, adopts just the first five *Breakthrough* factors. *See Williams*, 929 F.3d at 177. This Court finds the first five factors to be a sufficient analysis as the sixth factor overlaps with the first five. *See also Ransom v. Greatplains Fin., LLC*, ---F.4th---, No. 24-1908, 2025 WL 2203417, at *4 (3d Cir. Aug. 4, 2025) (joining Fourth, Seventh, and Ninth Circuits in adopting first five factors of *Breakthrough*).

6

governance, and (iii) was incorporated under tribal law as a tribal non-profit. *See Cain v. Salish Kootenai Coll., Inc.*, No. CV-12-181, 2018 WL 2272792, at *1 (D. Mont. May 17, 2018).

Here, the Tribe chartered KBOCC in 1975 as a non-profit corporation. (1975 KBOCC Charter, ECF No. 69-5, PageID.1194; ECF No. 69-8, PageID.1218.) It is the Tribe's sole tribal college. (*See* ECF No. 69-1, PageID.1138.) The charter also states that the KBOCC principal office be on L'Anse Reservation. (*See* 1975 KBOCC Charter, PageID.1195.) The Tribe also governs KBOCC by vetting the slate of nominees for selection to KBOCC's Board of Regents. (*See* 2020 KBOCC Bylaws, ECF No. 69-16, PageID.1315-18.) These facts demonstrate that KBOCC's method of creation weighs in favor of finding it is an arm of the Tribe. *See, e.g.*, *Cain*, 2018 WL 2272792, at *1 (following method of creation facts supported extending sovereign immunity: college sat on tribal land; incorporated under tribal law as a non-profit; and tribe appointed first board of directors); *Eggers v. Healing Lodge of the Seven Nations*, No. 2:24-cv-00078, 2025 WL 2346885, at *3-4 (E.D. Wash. Aug. 13, 2025) (finding tribal ownership of entity weighed in *favor* of immunity under method of creation factor); *cf. Tsosie v. N.T.U.A. Wireless LLC*, No. CV-23-00105, 2023 WL 4205127, at *2-3 (D. Ariz. June 27, 2023) (finding method of creation factor weighed *against* immunity because the tribe did not wholly own the entity).

### 2. Purpose

The purpose factor favors recognition of an entity as an arm of the tribe when the entity is designed to (i) advance tribal self-sufficiency, (ii) preserve cultural or educational traditions, or (iii) provide economic or social benefits primarily for the benefit of the tribe and its members. *See Cook v. AVI Casino Enters.*, 548 F.3d 718, 725-26 (9th Cir. 2008); *White*, 765 F.3d at 1025; *McCoy*, 334 F. Supp. 3d at 1121; *Cain*, 2018 WL 2272792, at *2. For instance, in *Cain*, the court found that the purpose factor weighed in favor of deeming the college an arm of the tribe because "[t]he Tribe established the College pursuant to its intrinsically governmental obligation 'to

represent, develop, protect, and advance the views, . . . and education of its members,'" and (2) "[m]ost of the College's students are Native Americans." 2018 WL 2272792, at *2.

In this case, the purpose factor weighs in favor of finding that KBOCC is an arm of the Tribe. The purpose of KBOCC was and remains, to this day, to "provide educational programs and/or to establish and operate educational institutions . . . on the L'Anse Indian Reservation." (1975 KBOCC Charter, PageID.1195; Revised 1998 KBOCC Charter, ECF No. 69-6, PageID.1200; Revised 2009 KBOCC Charter, ECF No. 69-7, PageID.1208.) The charter was revised in 2009 to include KBOCC's goal of providing "opportunities that support . . . practicing traditional/cultural ceremonies, diversity, and spirituality." (Revised 2009 KBOCC Charter, PageID.1208.) And in 2016, the charter announced that KBOCC was "[f]ormed out of [the Tribe's] American Indian identity, the mission of [KBOCC] is to offer post-secondary education, rich in Ojibwa culture, tradition, and beliefs." (2016 KBOCC Charter, PageID.1217.) Moreover, "[t]he Board of Regents aspires for the College to provide an education that will promote the preservation of the customs and beliefs of the Ojibwa people." (*Id.*) These facts demonstrate that KBOCC's purpose favors recognition as an arm of the Tribe.

### 3. Structure, Ownership, and Management

"Tribal ownership and management of an organization weighs in favor of finding it an arm of the tribe." *Eggers*, 2025 WL 2346885, at *3 (citing *Cook*, 548 F.3d at 726); *Gristede's Foods, Inc. v. Unkechuage Nation*, 660 F. Supp. 2d 442, 487 (E.D.N.Y. 2009)). . For example, a college was found to be under tribal control because its board of trustees included one representative from each of the tribe's seven districts. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000). Similarly, limiting membership on the board of trustees to tribal members shows tribal control. *Stathis v. Marty Indian Sch. Bd. Inc.*, 560 F. Supp. 3d 1283, 1296 (D.S.D. 2021).

8

Here, KBOCC is subject to tribal control. According to KBOCC's charter, the "Board shall elect a chairman, vice-chairman, treasurer and secretary from within their membership who are members of the Keweenaw Bay Indian Community." (2016 KBOCC Charter, PageID.1223.) And all "board members must be members of the Keweenaw Bay Indian Community." (Board of Regents By-Laws, ECF No. 69-13, PageID.1287.) Tribal Council, moreover, determines the slate of nominees for selection to the Board. (*See id.*, PageID.1287 "The Board of Regents shall submit a list of new Board nominees to the Trial Council."); *Manzano v. S. Indian Health Council, Inc.*, No. 20-cv-02130, 2021 WL 2826072, at *8 (S.D. Cal. July 7, 2021). In light of these facts, this factor weighs in favor of finding KBOCC as an arm of the Tribe.

### 4. Intent

Evidence that the tribe intended to share sovereignty with the entity will weigh in favor of finding that the entity is an arm of the tribe. *See McCoy*, 334 F. Supp. 3d at 1123. Intent can often be found in the entity's articles of incorporation. *See Eggers*, 2025 WL 2346885, at *3; *McCoy*, 334 F. Supp. 3d at 1122-23. Intent can also be recognized if the tribe "expressly" limits the entity's power to sue and be sued in tribal court. *McCoy*, 334 F. Supp. at 1123.

Here, the Tribe expressly limits KBOCC's power to sue and be sued in Tribal Court. (2016 KBOCC Charter, PageID.1224). KBOCC provides no other evidence to show that the Tribe intended to share its sovereignty with KBOCC. This factor, therefore, weighs only slightly in favor of extending immunity to KBOCC.

### 5. Financial Relationship

The last factor to consider is the tribe and entity's financial relationship. The more interconnected the two are, the more likely the entity will be considered an arm of the tribe. *See Cain*, 2018 WL 2272792, at *4.

9

Here, the Tribe and KBOCC are financially interconnected. The Tribe has made financial contributions to KBOCC. (*See* Report for Initial Accreditation, ECF No. 69-26, PageID.1377.) KBOCC also receives an annual financial subsidy and access to some tribal services from the Tribe. (*Id.*) Moreover, but for KBOCC being chartered by the Tribe, KBOCC would not have become a member of the American Indian Higher Education Consortium, an organization of thirty-seven American Indian tribal colleges that provides student financial assistance to tribal institutions. (*Id.*; TCU Roster and Profiles, https://www.aihec.org/tcu-roster-and-profiles/ [https://perma.cc/9ANJ-YU2B].) KBOCC also submits regular reports and budgets to the Tribal Council. (*See* ECF Nos. 69-19, 20, 21, 22, 23, 24, and 25.) The financial relationship between the Tribe and KBOCC favors extension of sovereign immunity.

\*          \*          \*

The Court finds that KBOCC is an arm of the Tribe. Therefore, KBOCC is entitled to tribal sovereign immunity. Koenig's claims against KBOCC will be dismissed.

### B. Waiver of Tribal Sovereign Immunity

Koenig argues that KBOCC waived its tribal immunity by agreeing to be governed by the HLC. Yet Koenig points to no provision or Act that unequivocally abrogated KBOCC's sovereign immunity by agreeing to be governed by the HLC for accreditation. *See Bay Mills Indian Cmty.*, 572 U.S. at 788-90; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (quoting *United States v. Testan*, 424 U.S. 293, 399 (1976)) ("[A] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"); *see also McCoy*, 334 F. Supp. 3d at 1122 ("If [plaintiff's] position was correct, every accredited tribally controlled college would be at risk of losing its sovereign status by virtue of its compliance with accreditation standards that required appropriate autonomy."). Accordingly, the Court finds that accreditation does not constitute an express and

unequivocal statement of waiver or unequivocal congressional abrogation of KBOCC's tribal sovereign immunity.

### C. Tribal Sovereign Immunity: Individual Defendants

Koenig alleges the same claims against Sherman, Virtanen, and Chosa (the Individual Defendants) in their official and individual capacities. The Individual Defendants argue that Koenig's claims are likewise blocked by tribal sovereign immunity. So the inquiry is whether KBOCC's sovereign immunity extends to the Individual Defendants in their official and personal capacities.

#### 1. Official Capacity

Tribal officials generally enjoy sovereign immunity in federal court from claims against them in their official capacities under federal or state law. *Muscogee (Creek) Nation v. Rollin*, 119 F.4th 881, 887 (11th Cir. 2024); *see James Joseph Morrison Consultants, Inc. v. Sault Ste. Marie Tribe of Chippewa Indians*, No. 2:97-cv-315, 1998 WL 1031492, at *3 (W.D. Mich. Aug. 6, 1998) ("[O]nly claims *for prospective relief* against tribal officials allegedly acting in violating of a federal law that are not barred by tribal sovereign immunity.") (citation omitted). Because "[a]n official-capacity claim, although nominally against the official, 'in fact is against the official's office and thus the sovereign itself.'" *Acres Bonusing Inc. v. Marston*, 17 F.4th 901, 908-09 (9th Cir. 2021) (quoting *Lewis v. Clarke*, 581 U.S. 155, 162 (2017)). Thus, the Individual Defendants are entitled to sovereign immunity against Koenig's official capacity claims unless an exception applies.

*Ex parte Young* creates an exception. Under *Ex parte Young*, tribal officials are not immune from suits that seek prospective declaratory or injunctive relief against ongoing violations

of federal law. *See* 209 U.S. 123, 155-56 (1908). *Ex parte Young* also permits suits for prospective relief against ongoing violations of state law.[3] *Rollin*, 119 F.4th at 887.

Here, Koenig asserts three claims against the Individual Defendants in their official capacities. A False Claims Act violation under 31 U.S.C. § 3729, a False Claims Act violation under 31 U.S.C. § 3730, and failure to pay sick leave and vacation under Mich. Comp. Laws §§ 408.473 and 408.475. These claims against the Individual Defendants in their official capacities are prohibited under tribal sovereign immunity, unless Koenig alleges prospective relief. He does not. Therefore, Koenig's claims against the Individual Defendants will be dismissed for lack of jurisdiction.[4]

### 2. Individual Capacity

Suits against officials in their individual capacities, the Supreme Court explains, are different. *Lewis*, 581 U.S. at 162-63. In individual capacity suits, the plaintiff "seek[s] to impose individual liability [on] a government officer for actions taken under color of . . . law." *Id.* (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). As a result, "the real party in interest is the individual, not the sovereign." *Id.* An officer in an individual-capacity action cannot assert tribal sovereign immunity as a defense. *See id.* at 163 (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 342-44 (2009)). Both parties agree on this.

The dispute, instead, centers on whether Koenig's allegations truly implicate the Individual Defendants' individual capacities. *See Lewis*, 581 U.S. at 162 ("[C]ourts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance

---

[3] But for ongoing violations of state law, the doctrine allows relief only when the alleged "conduct occurs outside of Indian lands." *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1290 (11th Cir. 2015).

[4] Even if Koenig requested prospective relief regarding his state law claim, it would be barred by sovereign immunity because the conduct occurred on Indian land. *See PCI Gaming Auth.*, 801 F.3d at 1290.

whether the remedy sought is truly against the sovereign."). "An officer sued in his individual capacity . . . cannot claim *sovereign* immunity from suit, 'so long as the relief is sought not from the [government] treasury but from the officer personally.'" *Id.* at 1112 (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). *Mestek v. Lac Courte Oreilles Cmty. Health Ctr.* guides how to make this crucial distinction. 72 F.4th 255 (7th Cir. 2023). There, the Seventh Circuit affirmed the trial court's decision to dismiss the plaintiff's individual capacity claims under 31 U.S.C. § 3730(h) and Wisconsin law against tribal officials. *Id.* at 261. Because the remedies the plaintiff's complaint sought—"front pay, back pay, damages, reinstatement, and injunctive relief"—were "truly against the sovereign," not the individual defendants. *Id.* at 261-62 (quoting *Lewis*, 581 U.S. at 162). In other words, the relief sought from the personal capacity claims was "nominally against the official and in fact [was] against the official's office." *Id.* at 261 (quoting *Lewis*, 581 U.S. at 162).

The Supreme Court addressed a different set of facts in *Lewis v. Clarke* and reached a different conclusion. In *Lewis*, a negligence suit was brought against a tribal employee in his individual capacity for a car accident he caused while working for the tribe. 581 U.S. at 159-60. Even though the tribe wasn't a party, the tribal employee sought protection under sovereign immunity from the plaintiff's negligence suit. *Id.* The Court was consequently tasked with who was the "real party in interest"—the employee or the tribe. *Id.* at 163. The Court answered the former: "This is not a suit against [the employee] in his official capacity. It is simply a suit against [the employee] to recover for his personal actions, which 'will not require action by the sovereign or disturb the sovereign's property.'" *Id.* (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U. S. 682, 687 (1949)).

13

With this guidance in mind, the Court finds that the real party at interest in this case is the KBOCC/Tribe, not the Individual Defendants. Similar to the plaintiff in *Mestek*, Koenig seeks relief for "actual wage loss, benefits, fringe benefits, sick leave, pension benefits," and "payment for his Master of Fine Arts Program" under the False Claims Act. (Compl. ¶¶ 58, 80, 89.) This requested relief would come from KBOCC's coffers, not the Individual Defendants'. Consequently, granting Koenig's requested relief would require action by the Tribe, not the Individual Defendants. Thus, Koenig has, in effect, sued the Individual Defendants in their official capacities. Tribal sovereign immunity bars his claims against them. *See Mestek*, 72 F.4th at 262; *Lewis*, 581 U.S. at 163.

Koenig argues that the Ninth and Tenth Circuit Court of Appeals have held that tribal sovereign immunity "never applies to a claim for damages against a tribal officer sued in his individual capacity" (ECF No. 75, PageID.1452). *See Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015), and *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1296-97 (10th Cir. 2008). Such a broad and absolute rule doesn't exist. The Supreme Court established in *Lewis* that courts "may not simply rely on the characterization of the parties in the complaint" in determining whether the "sovereign is the real party in interest." *Lewis*, 581 U.S. at 161-62. *Pistor* and *Native American Distributing* say the same; both cases recognize that a plaintiff's characterization of the parties is not conclusive in finding whether sovereign immunity bars the individual-capacity suit. *Pistor*, 791 F.3d at 1113; *Native Am. Distrib.*, 546 F.3d at 1296-97. These cases do not change this Court's analysis.

## IV. CONCLUSION

The Court concludes KBOCC is an arm of the Tribe and enjoys sovereign immunity from lawsuits. The immunity extends to the official claims brought against the Individual Defendants. The Court concludes that the individual capacity claims brought against the Individual Defendants are, in fact, official capacity claims. Accordingly, this Court does not have jurisdiction over Koenig's federal and state law claims.

## ORDER

Consistent with the accompanying Opinion, the Court **GRANTS** Defendants' motion to dismiss (ECF No. 69). Plaintiff Koenig's complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

Dated: August 28, 2025                   /s/ Paul L. Maloney
                                         PAUL L. MALONEY
                                         UNITED STATES DISTRICT JUDGE